# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**AISHA CARR**

|  |  |
|---|---|
|  | Case No: |
| Plaintiff, | [Trial by Jury Demanded] |

vs.

**CITY OF MILWAUKEE**

Defendant.

---

## COMPLAINT

---

NOW COMES Plaintiff, Aisha Carr, by her attorney, A. Steven Porter, and complains against the above-named defendant, and as for her claims for relief, alleges and shows to the court as follows:

### INTRODUCTION

1. This civil action is brought pursuant to 42 U.S.C. 2000e *et. seq.* known as Title VII. It is brought to remedy the harm that Aisha Carr (hereafter, "Carr") suffered as a result of the City of Milwaukee's decision to discriminate against Carr, a black female with Jamaican ancestry, based on her race, sex, and national origin in its decision to terminate Carr.

### PARTIES

2. At all times relevant to this action, Carr was an adult resident of the State of Wisconsin.

1

3. The City of Milwaukee, with offices of its executive at 200 E. Wells St., Milwaukee, WI 53202, is and was, at all times material hereto, a Municipal Corporation organized under the laws of the State of Wisconsin. The City of Milwaukee established, operated, and maintained the Office of Community Wellness and Safety ("OCWS"). The City of Milwaukee had ultimate control and authority over the OCWS and employees for the OCWS.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

5. Venue in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391 is proper insofar as the defendant is located in this district, and the events giving rise to the claim took place within this district.

## FACTUAL ALLEGATIONS

6. Carr began working for the OCWS on November 7, 2023 as a community violence prevention manager.

7. Carr initially reported to Karin Tyler (hereafter, "Tyler"), the operations manager; however, by December of 2023, she began reporting directly to the director, Ashanti Hamilton (hereafter, "Hamilton").

8. During Carr's employment, Tyler frequently made statements that the OCWS was concerned about Carr's work product because she was a woman, implying that women working together led to issues.

9. During the first few months working for the OCWS, Carr uncovered that grant funds intended for prior disbursement to a lead agency had never been disbursed as intended.

2

10. In December of 2023, the OCWS learned that they were going to be subject to an audit, and Carr was instructed to render an audit report regarding time periods where she was not in charge of the funds at issue in the audit.

11. When Carr expressed concerns with this request to Tyler and proposed alternative solutions, Tyler informed grant recipients that Carr was trying to stop their grant payments, leading to recipients calling and complaining to Carr.

12. Carr attended a meeting with Tyler and Hamilton with a binder of contracts, policies and communications to discuss issues she had with the OCWS' work product.

13. In December of 2023, Tyler and Hamilton informed Carr that she was communicating too much via email, asking the wrong questions, digging too much, and no one wanted to deal with her.

14. On December 11, 2023, Carr raised concerns about Tyler's breach of confidential information, at which point Tyler verbally attacked Carr and moved toward her in a threatening manner. As a result, Hamilton removed Tyler as Carr's direct supervisor.

15. In January of 2024, Carr informed Human Resources that she felt intimidated during Hamilton and Tyler's requests for frequent in-person meetings. She also complained to HR that she was being discriminated against because of her gender. Aisha requested that HR provide her with a representative in her ensuing meeting and that the meeting remain confidential.

16. Despite this, Hamilton called Carr into a meeting the day following her conversation with HR and intimidated her in front of her colleagues. Hamilton told her "You are not going to fuck this shit up by going to HR. If you want to leave – there is the door. Leave."

3

17. Hamilton texted Carr racially insensitive language, stating "we can't be out here with nig** behavior" and discussed how Jamaicans work too much and her heritage was impacting the way she was working.

18. Hamilton also told Carr that Jamaicans are fighters and that Carr was always in fight mode, particularly because she was carrying the binder.

19. Hamilton discussed the need to separate "you women," referring to Carr and Tyler.

20. On or around February 2, 2024, Hamilton and Tyler terminated Carr.

21. The U.S. Equal Employment Opportunity Commission issued a right to sue letter on February 18, 2026. Carr received the right to sue letter on February 21, 2026, rendering her 90-day deadline to file suit May 22, 2026.

**CLAIMS FOR RELIEF FOR DISCRIMINATION, RETALIATION AND HOSTILE WORK ENVIRONMENT AGAINST CITY OF MILWAUKEE: VIOLATION OF TITLE VII**

22. Plaintiff states the preceding paragraphs as if set forth fully herein.

23. The City of Milwaukee discriminated against Carr on the basis of her race, sex, and/or national origin, and in retaliation for complaining of gender discrimination, resulting in the City of Milwaukee terminating her as the Community Violence Prevention Manager.

24. The City of Milwaukee terminated Carr because of her race, sex, and/or national origin. If Carr had been a different race, sex, and/or national origin, the City of Milwaukee would not have terminated her. The City of Milwaukee also terminated Carr in retaliation for complaining of gender discrimination.

25. Hamilton and/or Tyler were Carr's supervisors and had the ability to affect the conditions of Carr's employment, including but not limited to the ability to fire Carr.

4

26. The above-described conduct by Hamilton and/or Tyler was unwelcome and occurred because of Carr's race, sex, and/or national origin.

27. The above-described conduct by Hamilton and/or Tyler was sufficiently severe or pervasive that a reasonable person in Carr's position would find Carr's work environment to be hostile or abusive in violation of Title VII.

28. At the time the conduct occurred, Carr believed that the conduct made her work environment hostile or abusive.

29. Under the doctrine of *respondeat superior*, Defendant City of Milwaukee is vicariously liable to Carr for damages in an amount to be proven at trial.

30. As a proximate result of the City of Milwaukee's discrimination against Carr on the basis of her race, sex, and/or national origin in its decision to terminate Carr, Carr has suffered and continues to suffer substantial losses, including emotional distress and the loss of past and future earnings and other employment benefits.

WHEREFORE, Plaintiff Carr demands judgment as follows:

a. Judgment in an amount sufficient to compensate Carr for her injuries and losses;

b. Judgment for punitive damages in a fiar and just amount;

c. For all costs, disbursements and actual attorneys' fees pursuant to Title VII;

d. For such other relief as the Court deems just and equitable.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL OF SIX JURORS FOR THIS MATTER ON ALL ISSUES SO TRIABLE**

5

Dated this 20th day of May, 2026

                                                    _/s/ A. Steven Porter_____
                                                            Attorney A. Steven Porter
                                                            State Bar No. 01000195
                                                            Attorney for Plaintiff
                                                            Aisha Carr

P.O. Box 7093
Madison, Wisconsin 53707
(608) 698-9319
(608) 819-6466 (fax)
asp5949@gmail.com

6